

RECEIVED

JAN 1 5 2025

CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

SCANNED
JAN 1 5 2026
U.S. DISTRICT COURT MPLS

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

FULGENCIO SALAZAR BONILLA

      Petitioner,

Case No.  26-cv-360-NEB/DJF

v.

Pamela Bondi, Attorney General,

Kristi Noem, Secretary, U.S.
Department of Homeland Security,

Todd M. Lyons, Acting Director of
Immigration and Customs
Enforcement, and

David Easterwood, Acting Director, St.
Paul Field Office Immigration and
Customs Enforcement

      Respondents.

**VERIFIED PETITION
FOR WRIT OF
HABEAS CORPUS**

Expedited Handling Requested

## INTRODUCTION

1.     Petitioner, Mr. Fulgencio Salazar Bonilla, by and through Next Friend,

Stefany L. Salazar, hereby files this petition for a writ of habeas corpus and a

complaint for declaratory and injunctive relief to require U.S. Immigration and

Customs Enforcement ("ICE") to release Mr. Salazar Bonilla from ICE

detention or provide Mr. Salazar Bonilla with a bond hearing pending the completion of Mr. Salazar Bonilla's immigration proceedings.

## JURISDICTION AND VENUE

2.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1361 (federal employee mandamus action); 28 U.S.C. § 1651 (All Writs Act); 28 U.S.C. § 2241 (habeas corpus); Art. I, § 9, c. 2 of the U.S. Constitution ("Suspension Clause"); 5 U.S.C. § 702 (waiver of sovereign immunity); and 28 U.S.C. § 2201 (Declaratory Judgment Act).

3.      Federal question jurisdiction exists because [insert friend name here] seeks to challenge Mr. Bonilla's custody as a violation of the Constitution and the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq.

4.      Federal district courts have jurisdiction under 28 U.S.C. § 2241 to hear habeas petitions by noncitizens challenging the lawfulness or constitutionality of their detention by the Department of Homeland Security ("DHS"). *Denmore v. Kim*, 538 U.S. 510 516-17 (2003); *Jennings v. Rodriguez*, 138 S. Ct. 830, 839-41 (2018); and *Nielsen v. Preap*, 139 S. Ct. 954, 961-63 (2019).

5.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b), (e)(1)(B), and 2241(d) because Mr. Salazar Bonilla is detained within the District of Minnesota.

6.    Venue is also proper in this Court pursuant to 28 U.S.C. §

1391(e)(1)(A), because Respondents are operating in this district.

## PARTIES

7.    Petitioner is a citizen of Mexico and a resident of Richfield

Minnesota, who is currently being held at the Fairview Southdale Hospital in

Minnesota. Petitioner is under the direct control of the respondents and has no

scheduled release date.

8.    Respondent Pamela Bondi is being sued in her official capacity as the

Attorney General of the United States and the head of the Department of

Justice. Attorney General Bondi shares responsibility for implementation and

enforcement of the immigration detention statutes, along with Respondent

Noem. Attorney General Bondi is a legal custodian of Mr. Salazar Bonilla.

9.    Respondent Kristi Noem is being sued in her official capacity as the

Secretary of the Department of Homeland Security. In this capacity, Secretary

Noem is responsible for the administration of the immigration laws pursuant to

8 U.S.C. § 1103(a), routinely transacts business in the District of Minnesota,

supervises the Fort Snelling ICE Field Office, and is legally responsible for

pursuing Mr. Salazar Bonilla's detention and removal. As such, Respondent

Noem is a legal custodian of Mr. Salazar Bonilla.

10.    Respondent Todd M. Lyons is the Acting Director of U.S. Immigration and Customs Enforcement and is sued in his official capacity. Defendant Lyons is responsible for Petitioner's detention.

11.    Respondent David Easterwood is being sued in his official capacity as the Acting Field Office Director for the Fort Snelling Field Office for ICE within DHS. In that capacity, Field Director Easterwood has supervisory authority over the ICE agents responsible for detaining Mr. Salazar Bonilla. The address for the Fort Snelling Field Office is 1 Federal Drive, Fort Snelling, Minnesota 55111.

## NEXT FRIEND

12.    Next Friend Ms. Stefany Larios Salazar brings this habeas corpus action as next friend of Petitioner, Mr. Fulgencio Salazar Bonilla, who is currently detained by U.S. Immigration and Customs Enforcement.

13.    A next friend does not become a party to the habeas action but instead prosecutes the case on behalf of the detained individual, who remains the real party in interest. *Whitmore v. Arkansas*, 495 U.S. 149, 163 (1990).

14.    Next-friend standing is appropriate where the detainee cannot prosecute the action on their own, due to lack of access to the courts or a similar disability. *Id*. at 163–64. Additionally, a next friend may bring a petition "only if the litigation actually involves the concerns of the real party in interest, and

not simply the grievances of the next friend." *Amerson v. Iowa, Dep't of Hum. Servs. by Palmer*, 59 F.3d 92, 93 (8th Cir. 1995) (citing 28 U.S.C. §§ 2242, 2254(a); *Whitmore*, 495 U.S. at 163–64.

15.    Here, the detainee is unable to prepare, sign, or file this petition because they are held in ICE custody at the Fairview Southdale Hospital without reliable access to legal materials or translation services, and they face pending removal. These conditions make meaningful access to the courts impossible absent next-friend intervention.

16.    Next friend, Ms. Stefany Larios Salazar, is the granddaughter of Mr. Fulgencio Salazar Bonilla and has a significant relationship with him. Ms. Larios Salazar is acting solely in the Petitioner's best interests, not to assert her own rights or interests. Ms. Larios Salazar therefore satisfies the requirements for next-friend standing under *Whitmore* and *Amerson*, and this Court has jurisdiction to consider the petition.

### FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

17.    Petitioner is a resident of Richfield and a citizen of Mexico. He has lived in the United States since November of 2002.

18.    Mr. Salazar Bonilla lives with his domestic partner, Ms. Silvia Salazar Bonilla in Richfield, Minnesota. He has a large and beloved extended family in Minnesota, concentrated around Hennepin County.

19.    Mr. Salazar Bonilla has many friends, and is an active participant in his community–for example,  Mr. Salazar Bonilla is an attendee of multiple churches, with one of them being Igelesia Apostolica Eterna Roca. His church attendance is normally three times during the week and attends each weekend. He is picked up by church members to participate in church activities. He reads the bible in front of the church. He also sings in choir and plays the tambourine. He also volunteers to help churches with family reunions and birthdays. The pastor sometimes comes to his house on social visits.

20.    Mr. Salazar Bonilla pays taxes to the U.S. and Minnesotan governments and has a spotless criminal record.

21.    Individuals wearing, mainly white and only speaking in English, approached Mr. Salazar Bonilla from behind when he was near the Walmart in Bloomington, MN on January 10th, 2026. These men are believed to be agents of Respondent ICE.

22.    Mr. Salazar Bonilla was promptly handcuffed, and taken into custody.

23.    This arrest is part of an operation in Hennepin and Ramsey counties called "Operation Metro Surge." This operation has involved hundreds of masked, unidentified individuals in unmarked vehicles (many with illegally covered or mismatched license plates) holding themselves out as ICE agents but largely refusing to identify themselves by name or to present warrants,

physically assaulting pedestrians, pepper spraying and arresting citizen

observers, hitting passersby with vehicles, and generally attempting to take as

many immigrants as possible into custody regardless of the constitutionality of

their actions. *See*, e.g., Compl., *Tincher et. al. v. Noem*, No. 0:25-cv-04669. (D.

Minn. 12/17/2025).

24.     Mr. Salazar Bonilla was brought directly to the ICE Detention

Facility. He was then transported to Fairview Southdale Hospital due to his

medical conditions.

25.     Mr. Salazar Bonilla currently suffers from multiple medical

conditions. Mr. Salazar Bonilla has had two to three heart attacks within the

past four years. He suffers from diabetes, high blood pressure, kidney stones,

eye pressure, as well as recent hip injury from slipping on ice prior to his arrest.

26.     Mr. Salazar Bonilla currently takes seventeen medications, among

those being CHOLEcalciferol, metformin, and Atorvastatin.

27.     Mr. Salazar Bonilla poses no risk to society and has strong

connections to his community in Hennepin County, including family, friends,

and his church community.

28.     Detaining Mr. Salazar Bonilla is an expensive and pointless endeavor.

Mr. Salazar Bonilla respectfully seeks the opportunity to return to his home in

Minneapolis, Minnesota, and to continue following the legal processes set up by Congress and DHS for immigrants to seek status in this country.

29.    Pending the adjudication of his Petition, Mr. Salazar Bonilla further seeks an order restraining the Respondents from transferring him to a location outside of the State of Minnesota, so that he may remain within the jurisdiction of this Court and accessible to his legal counsel and family support networks.

## STANDARD OF LAW

30.    Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The "Great Writ" has been referred to by US Courts as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

31.    The Court must grant a petition for writ of habeas corpus or issue an order to show cause to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id*.

32.    Detained immigrants petitioning under 28 U.S.C. § 2241 face no statutory exhaustion requirements. *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957,

965 (D. Minn. 2025). Nor is a judicially imposed prudential exhaustion requirement appropriate where, as here: time is of the essence, facts are largely undisputed, and the parties' disagreement is based on a legal conclusion. *Id*. at 967-68.

33. Other courts in the Eighth Circuit have similarly declined to require prudential exhaustion when evaluating a detained immigrant's habeas corpus petition under similar circumstances–to address a question of statutory interpretation that does not require developing a factual record, and where the agency is demonstrably unlikely to reverse its course. *Giron Reyes v. Lyons*, 2025 WL 2712427 at *3 (N.D. Iowa Sept. 23, 2025).

34. "[T]he Due Process Clause applies to all 'persons' within the United States, including [immigrants], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

35. Only under certain circumstances are immigrants subject to ongoing detention without a bond hearing. *See*, *e.g.*, 8 U.S.C. § 1226(c) (individuals with certain criminal convictions may be detained without a bond hearing for the pendency of removal proceedings[1]) *and* 8 U.S.C. § 1225(b)(2) (authorizing

---

[1] Even when detained under 1226(c), immigrants retain due process rights and are entitled to a hearing if the period of detention becomes unreasonable. *See*, e.g., *Pedro O v. Garland*, 543 F.Supp.3d 733 (D. Minn. 2021) (finding a year-long mandatory detention pursuant to 8 U.S.C. § 1226(c) without an individualized hearing to violate an immigrant's due process rights).

mandatory detention of immigrants seeking admission from outside the United States, who are "not clearly and beyond a doubt entitled to be admitted.").

36.     Otherwise, the "default rule" is that 8 U.S.C. § 1226(a) and its implementing regulations apply to immigrants "already present in the United States" and subject to pending removal proceedings. *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Under this default rule, immigrants are constitutionally entitled to a bond hearing. *R.E. v. Bondi*, No. 25‑CV‑3946 (NEB/DLM), 2025 WL 3146312 (D. Minn. Nov. 4, 2025). *See also Mayamu K. v. Bondi*, No. 25-3035 (JWB/LIB), 2025 U.S. Dist. LEXIS 260661 (D. Minn. Oct. 20, 2025) (holding that an immigrant detained after entry while in asylum proceedings is held pursuant to 8 U.S.C. § 1226(a), and that the recent DHS policy attempting to reclassify interior arrests under 8 U.S.C. § 1225 so as to hold asylum seekers without a bond hearing is unlawful and unconstitutional.).

37.     To summarize: immigrants "who are arrested and detained may generally apply for release on bond or conditional parole." *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021) (citing §1226(a)(2)). In such cases, 8 U.S.C. "§1226 governs the detention … until §1231's "removal period" begins." *Id*. at 533. The removal period only begins once any administrative challenges or judicial review of the removal order have concluded. 8 U.S.C. §1231(a)(1)(B).

38.    Here, Mr. Salazar Bonilla's removal proceeding is pending, because he has an active case with the EOIR, and therefore he is entitled to a bond hearing under 8 U.S.C. § 1226 and its supporting regulations.

## CLAIMS FOR RELIEF

### COUNT ONE

### Fifth Amendment Due Process

*Petitioner is being deprived of an adequate and meaningful process to challenge his ongoing confinement.*

39.    Petitioner realleges and incorporates by reference the allegations contained above.

40.    Mr. Salazar Bonilla has due process rights as a resident of the United States. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

41.    Federal courts use the three-part test in *Matthews v. Eldridge* to determine whether civil detention violates a detainee's due process rights. 424 U.S. 319 (1976). The elements of this test are: (1) the private interest that the official action affects; (2) the risk that the procedures used will result in an erroneous deprivation of the private interest, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest in following the existing procedures, both in achieving their objectives and in the potential burdens of an alternate procedure. *Id*. at 335.

42.    Here, all three factors favor the petitioner.

43.     First, Mr. Salazar Bonilla has a significant private interest at stake. A person's interest in freedom from physical detention is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 124 S.Ct. 2633, 159 L.Ed.2d 578 (2004); see also *Zadvydas*, 533 U.S. at 690, 121 S.Ct. 2491 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). Mr. Salazar Bonilla currently experiences the gambit of deprivations that come with physical detention, including separation from his family and his community, and difficulty managing his multiple medical conditions.

44.     Second, Mr. Salazar Bonilla will continue to be deprived of this interest if the current procedure (detaining Mr. Salazar Bonilla without a hearing) is followed. With his lack of criminal record and his demonstrated pattern of following instructions and appearing for court proceedings, Mr. Salazar Bonilla has a strong likelihood of meeting the criteria for being released on bond. 8 CFR §§236.1(c)(8), 1236.1(c)(8) (2020); *In re Adeniji*, 22 I. & N. Dec. 1102, 1113 (BIA 1999). Even if he is not subsequently released, he still has a legal and constitutional interest in the hearing itself, in being heard.

45.     Lastly, the Government has no legitimate interest in refusing to follow its own rules. Mr. Salazar Bonilla poses no safety threats to the community.

Releasing Mr. Salazar Bonilla, or holding a hearing to release him on bond, would in fact *save* the government the resources and expense of continuing to imprison him.

46.    The placement of Mr. Salazar Bonilla in detention pending the resolution of his asylum proceedings violates his constitutional rights to due process guaranteed in the Fifth Amendment.

## COUNT TWO

### Immigration and Nationality Act, 8 U.S.C. § 1226

*Petitioner's Ongoing Detention, without the Opportunity for a Bond Hearing, Violates his Statutory Right to a Hearing as Guaranteed by 8 U.S.C. § 1226*

47.    Petitioner realleges and incorporates by reference each and every allegation contained above.

48.    When a decision in an asylum application is pending on appeal and an immigrant is being detained pursuant to 8 U.S.C. § 1226(a), that immigrant is entitled to a bond hearing pursuant to 8 CFR §§236.1(c). Respondents violate the Immigration and Nationality Act by refusing to follow this required process.

49.    Mr. Salazar Bonilla detained, notwithstanding his pending asylum application, without being afforded an opportunity to advocate for his release back into his community as the law requires.

## REQUEST FOR ORDER TO SHOW CAUSE

50.     Within three days, unless good cause for a delay is shown, "[a] court, justice or judge entering a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243.

51.     Next Friend Mr. Salazar Bonilla, on behalf of Petitioner, respectfully requests that the Court issue an Order to Show Cause directing Respondents to file a return within three days of the Court's order, showing cause, if any, why a writ of habeas corpus should not be granted.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Salazar Bonilla, by and through Next Friend, Stefany Larios Salazar, prays that this Court grant the following relief;

(1) Assume jurisdiction over this matter;

(2) Issue an Order requiring Respondents to show cause as to why Petitioner should not be released immediately, or in the alternative afforded a bond hearing;

(3) Alternatively, issue a writ of habeas corpus requiring Respondents to release Petitioner unless they provide a bond hearing under 8 U.S.C. § 1226(a) within seven days; and

(4)  Grant any other and further relief that this Court may deem just and proper.

Date:

Stefany Larios Salazar
8336 Penn. Ave. S.
Bloomington, MN 55431
stelar0507@icloud.com
612-263-2505

*Next Friend to Petitioner*
*Not An Attorney*

**Verification by Someone Acting on
Petitioner's Behalf Pursuant to 28 U.S.C. § 2242**

I am submitting this verification on behalf of Petitioner because I am

Petitioner's domestic partner and acting on Petitioner's behalf as a Next Friend. I

have personal knowledge of the factual assertions in this petition. I hereby verify

that the statements made in the attached Petition for Writ of Habeas Corpus,

including the statements regarding Petitioner's detention status, are true and correct

to the best of my knowledge.

Date: _____    _____

                                    Stefany Larios Salazar